```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                  CASE NO. 23-80045-CRIMINAL-CANNON

 3
     UNITED STATES OF AMERICA,
 4
                     Plaintiff,              MAY 23, 2023
 5
          vs.
 6                                           FORT PIERCE, FLORIDA
     BELAS SHELSON ROSIER,
 7
                     Defendant.              Pages 1 - 56
 8   _____/

 9


10                  TRANSCRIPT OF MOTION HEARING
                 BEFORE THE HONORABLE AILEEN CANNON
11                  UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   FOR THE PLAINTIFF:     JOHN McMILLAN, AUSA
                            Office of U.S. Attorney
15                          101 South US Highway One
                            Suite 3100
16                          Fort Pierce, Florida  34950

17

18   FOR THE DEFENDANT:     JACK FLEISCHMAN, ESQ.
                            2161 Palm Beach Lakes
19                          109 North 2nd Street
                            Fort Pierce, Florida  34950
20

21

22

23   REPORTED BY:          DIANE MILLER, RMR, CRR
                           Official Court Reporter
24                         (772)467-2337
                           diane_miller@flsd.uscourts.gov
25
```

1                        P–R–O–C–E–E–D–I–N–G–S

2              THE COURT:  Good afternoon.

3              Please call the case.

4              THE COURTROOM DEPUTY:  United States vs. Belas

5    Shelson Rosier, case number 23-Criminal-80045.

6              Will parties please make your appearance starting

7    with the Government.

8              MR. McMILLAN:  Good afternoon, Your Honor; John

9    McMillan on behalf of the United States.  With me at counsel's

10   table is Special Agent Anderson Sullivan of Homeland Security

11   Investigations.

12             THE COURT:  Good afternoon to you both.

13             MR. FLEISCHMAN:  Good afternoon, Your Honor.  Jack

14   Fleischman.  I'm present with Belas Rosier, the defendant.

15             THE COURT:  Good morning, Mr. Fleischman.

16             And good morning, Mr. Rosier.

17             Do we have the aid of an interpreter today,

18   Mr. Fleischman?

19             MR. FLEISCHMAN:  Yes, Your Honor, we do.

20             THE COURT:  In what language?

21             MR. FLEISCHMAN:  Creole.

22             THE COURT:  Okay.

23             All right.  Mr. Rosier, if, at any point, you can't

24   understand what I'm saying or if there are any issues with the

25   audio, please let me know so we can rectify that.  Do you

1    understand, sir?

2              THE DEFENDANT:  Yes, I will do so.

3              THE COURT:  Okay, great.

4              You may all be seated unless you're addressing the

5    Court.

6              This is a hearing on the Government's motion to

7    introduce evidence pursuant to Federal Rule of Evidence 404(b),

8    docket entry 18.  I reviewed the motion along with the attached

9    exhibits containing numerous text messages that are the subject

10   of the motion.  I've also reviewed the defendant's response and

11   objection to the Government's motion, and that response is at

12   docket entry 27.

13             This matter, I will note, is currently set for trial

14   during the two-week period starting on July 17th.  And the

15   charge at issue is an information filed on March 16th with a

16   single offense of knowingly and intentionally possessing with

17   the intent to distribute a controlled substance on or about

18   June 22nd of 2022.  And the information goes on to specify the

19   controlled substances involved in the violation which include

20   400 grams or more of fentanyl and ten grams or more of a

21   mixture and substance containing a detectable amount of another

22   substance commonly known as fentanyl.  There is also cocaine

23   alleged in the information as well.

24             Mr. McMillan, am I correct that the violation

25   involves three different substances?

1          MR. McMILLAN:  It does, Your Honor.

2          THE COURT:  And what is the difference between the

3    400 grams or more of fentanyl versus the ten grams or more of

4    that other analogue?

5          MR. McMILLAN:  Your Honor, under Title 21, United

6    States Code, Section 841(a)(1), there are different penalties

7    associated with an analogue of fentanyl rather than fentanyl

8    itself.

9          THE COURT:  I understand.  So the 400 grams is

10   pursuant to 841(b)(1)(A)(vi), and the analogue is

11   841(b)(1)(B)(vi), is that correct?

12         MR. McMILLAN:  Yes, Your Honor.  I didn't bring my

13   statute book with me today, but they should be in the actual

14   indictment itself.

15         THE COURT:  Okay.

16         All right.  So now that we have set the groundwork

17   for the motion, Mr. McMillan, since it is your motion, why

18   don't you make argument on it?

19         MR. McMILLAN:  Thank you, Your Honor.

20         Your Honor, as the Court is well aware, under 404(b),

21   the seminal case in this issue is *United States vs. Beechum*,

22   B-E-E-C-H-U-M, found at 582 F.2d at pages 898 and 911, a Fifth

23   Circuit case from 1978.  And virtually every Eleventh Circuit

24   case since that time follows the same three-part *Beechum* test.

25   And as I've articulated in our written memorandum to the Court

1    in our motion requesting permission to introduce 404(b)

2    evidence, which is found at docket entry 18, the first part of

3    the *Beechum* test is that, first, it has to be relevant to an

4    issue other than the defendant's character; second, that its

5    probative value is not substantially exceeded by undue

6    prejudice; and finally, sufficient evidence that the defendant

7    committed the extrinsic act.

8            With respect to the relevance to an issue other than

9    character, again, as I've articulated in our written

10   memorandum, we are seeking to introduce this evidence to go and

11   show knowledge of intent and knowledge.  And to quote -- first

12   of all, the case of *United States vs. Jernigan*, that's

13   J-E-R-N-I-G-A-N, found at 341 F.3d 1273, an Eleventh Circuit

14   case from 2003, the Eleventh Circuit has consistently, since

15   2003, affirmed the fact that Rule 404(b) is a rule of

16   inclusion; and that, accordingly, 404(b) evidence, like other

17   relevant evidence, should not be lightly excluded when it is

18   central to the prosecution's case, citing the case of *United*

19   *States vs. Perez-Tosta*, P-E-R-E-Z, hyphen, T-O-S-T-A, found at

20   36 F.3d 1552, 1562, an Eleventh Circuit case from 1994.

21           THE COURT:  And just to confirm, your motion involves

22   only the text messages in Government Exhibit 1.  That's the

23   evidence you're seeking to introduce in your motion.

24           MR. McMILLAN:  Yes, Your Honor.

25           THE COURT:  Okay.

1          MR. McMILLAN:  Yes, Your Honor.  There aren't

2     previous convictions or anything of that nature that we are

3     seeking to introduce.

4          And I would also note that as set forth in *United*

5     *States vs. Hunter*, an unpublished case in the Eleventh Circuit,

6     found at 758 Federal Appendix 817 and at pages 822-823, the

7     Court in that case stated that, at first prong, a defendant who

8     pleads not guilty to a drug trafficking offense makes intent a

9     material issue that imposes a substantial burden on the

10    government which it may prove using qualifying 404(b) evidence,

11    absent affirmative steps by the defendant to remove intent as

12    an issue.

13         And the Eleventh Circuit cited its previous decisions

14    in *United States vs. Zapata*, Z-A-P-A-T-A, found at

15    139 F.3d 1355 and specifically at pages 1357 through '58, an

16    Eleventh Circuit case from 1998, and further cited *United*

17    *States vs. Delgado*, 56 F.3d 1357, 1365, an Eleventh Circuit

18    case from 1995, wherein the *Delgado* court said:  "Circuit

19    precedent regards virtually any prior drug offense as probative

20    of the intent to engage in a drug conspiracy."  And I would

21    submit, Your Honor, that that reasoning is not limited to the

22    issue of conspiracy alone but rather the possession with intent

23    to distribute the drugs.

24         In this case, the Government is obliged to prove

25    beyond a reasonable doubt that the defendant possessed the

```
 1   fentanyl and cocaine and the fentanyl analogue with the intent
 2   to distribute it to others.  We have seen no sign that the
 3   defendant through counsel wishes to go and stipulate to any of
 4   the elements of the offense charged in the indictment, and
 5   thus, it's the Government's obligation to establish those
 6   things, particularly where, as here, we have a substantial
 7   stockpile of those drugs found in the defendant's own residence
 8   and yet he has made no statements.  We have nothing else to
 9   establish the issue of intent to distribute to other people
10   other than, first, the quantity of the drugs involved; and
11   secondly, the evidence that we seek to introduce the
12   possession -- well, his previous distribution -- or I should
13   say communications relating to the distribution of fentanyl and
14   cocaine --
15            THE COURT:  Let me just -- I just want to clarify
16   describing the contents of Government's Exhibit 1, these are
17   text messages between the defendant, Mr. Rosier, and who?
18            MR. McMILLAN:  We prosecuted two brothers and -- may
19   I check just one thing, Your Honor?
20            And Justin Garth.  And forgive me, Your Honor, but
21   there were two Garth brothers, and I need to keep them straight
22   from one another.  Justin Garth is the specific Garth brother
23   at issue herein.
24            THE COURT:  So this exhibit, Government's 1, docketed
25   at 18-1, this is a compilation of text messages between the
```

1    defendant and Mr. Justin Garth?

2         MR. McMILLAN:  Yes, Your Honor.  Justin Garth -- was

3    Your Honor done with the question?

4         THE COURT:  Yes.  I'm just looking for a precise and

5    crisp description of what exactly is in Government's Exhibit 1.

6         MR. McMILLAN:  Yes, Your Honor.

7         When Justin Garth was arrested, a search warrant was

8    conducted on his residence.  His cellular phone was found.

9    Pursuant to search warrant, it was searched.  Inside of that

10   cell phone were found communications between Justin Garth --

11   and we know that that's his phone, it was in his possession --

12   and an individual that was listed in the phone as "Bizly," and

13   that's B-I-Z-L-Y.

14        So the question -- and this goes to one of the -- the

15   third element of the *Beechum* test --

16        THE COURT:  But before you move on, again, time

17   period.  We're talking about these communications in

18   Government's 1; again, they're between the defendant you have

19   proffered and Mr. Justin Garth; from what period of time until

20   what period of time?

21        MR. McMILLAN:  I articulated it in my written

22   response, Your Honor.  May I just -- as set forth on page 5 of

23   docket entry 18, the Government seeks to introduce the text

24   messages in Government's Exhibit 1 between Defendant Rosier and

25   the convicted drug trafficker, Justin Jordan Garth, which span

1    the time period from on or about October 4th of 2021 through on

2    or about March 8th of 2022.

3              THE COURT:  And then the charge in this case is

4    June 22?

5              MR. McMILLAN:  Yes, Your Honor.

6              So as I set forth in my written memorandum, we're

7    only talking about five to six months before the charged event

8    took place.

9              THE COURT:  Okay.  And then just substantively, in

10   terms of the text messages themselves, what evidence do you

11   have to link that phone number and the name Bizly to Mr. Belas

12   Shelson Rosier?

13             MR. McMILLAN:  If the Court would permit me to,

14   Special Agent Anderson Sullivan is prepared to present

15   testimony specifically how he was able to do that.  But

16   essentially, Your Honor, it's because the phone number for

17   Bizly is actually registered in the defendant's own name.

18             THE COURT:  Okay.

19             MR. McMILLAN:  And, number two, during those text

20   messages, there were communications between Garth and Bizly;

21   and on one date, Bizly is stating:  "Today is my birthday," and

22   that particular date corresponds exactly with

23   Defendant Rosier's birthday, based on his Florida driver's

24   license personnel data.  And then finally, when the defendant

25   was arrested -- and I'm speaking of Mr. Rosier in this case --

```
1    was arrested.  The agents conducted a test between the phone
2    that they found in his -- meaning the defendant's in this case,
3    Mr. Rosier's possession and the phone number that had been
4    called by Bizly.  And they actually have -- I believe it's a
5    videotape, isn't it, or a video -- two photos showing the phone
6    being dialed and coming up on the defendant's cell phone here.
7    So that is the same phone that Garth was communicating with
8    under the name "Bizly."
9            THE COURT:  Okay.  And then -- we'll get to that in
10   just a minute -- linking the phone number to the defendant.
11   But specifically in terms of the communications themselves, can
12   you point me to some examples in this government exhibit that
13   would show that intent and that knowledge that you say is
14   relevant to an issue other than character?
15           MR. McMILLAN:  Your Honor, the submitted examples
16   that we gave the Court are consistently -- I mean, I can go and
17   give you a specific one, but they're essentially coded
18   communications, sometimes less coded than others, in which
19   Garth is talking about ordering "nine," and they're talking
20   about the prices of the drugs.  They're talking about buying
21   "zips," which are ounces, and a price is cited for the drugs.
22   This would obviously require someone who was a street-level
23   drug trafficking expert to translate some of these terms for
24   the jury, but we have that ability.
25           THE COURT:  Okay.  And where is that information
```

```
 1   summarized in the papers?
 2           I see in the beginning of the motion, there's like a
 3   general reference to conversations about pricing for a kilogram
 4   and multi-gram quantities of drugs, transfer of tens of
 5   thousands of dollars and meeting locations and times, as well
 6   as communications establishing that the person going by the
 7   alias name "Bizly" in Garth's contacts list and in the text
 8   messages to and from Garth was Defendant Rosier.  So that's
 9   what I'm wondering, if you could point me to particular, I
10   guess, text message chains that discuss these issues as you've
11   described them in your motion.
12           MR. McMILLAN:  I'm happy to do so, Your Honor.  It
13   may take some time to go through these because they are
14   multiple pages per communication, but if I may call Special
15   Agent Sullivan as a witness?
16           THE COURT:  Okay.  Let's do that.
17           MR. McMILLAN:  May I have just a moment to show these
18   to Counsel, Your Honor?
19           THE COURT:  Yes.
20           And these are the same texts that are attached to the
21   Government's motion, right?
22           MR. McMILLAN:  Yes, they are, Your Honor.  They're
23   exactly the same.
24           THE COURT:  Okay.
25               (Brief pause in the proceedings)
```

```
 1            MR. McMILLAN:  And, Your Honor, right now, does the
 2   Court want me just to deal with that issue and not the identity
 3   issue?
 4            THE COURT:  So yes, those are the two objectives
 5   here.  We don't need to go through this entire text message
 6   chain but just a few excerpts that are indicative and
 7   reflective of the relevance of the texts and then testimony
 8   linking the phone number and the name "Bizly" to the defendant,
 9   Belas Shelson Rosier.
10            MR. McMILLAN:  Yes, Your Honor.
11            Please be sworn in.
12     SPECIAL AGENT ANDERSON SULLIVAN, GOVERNMENT WITNESS, SWORN
13            THE COURTROOM DEPUTY:  Please state your full name,
14   spelling your last name for the record.
15            THE WITNESS:  Anderson Sullivan, S-U-L-L-I-V-A-N.
16            MR. McMILLAN:  May I inquire, Your Honor?
17            THE COURT:  Yes, you may.
18                        DIRECT EXAMINATION
19   BY MR. McMILLAN:
20   Q   Special Agent Sullivan, how are you employed?
21   A   I'm employed with Homeland Security Investigations in West
22   Palm Beach, Florida.
23   Q   And how long have you worked for HSI?
24   A   Since 2007.
25   Q   Are part of your responsibilities the investigation of
```

1  certain types of drug offenses?

2  A    Yes.

3  Q    And did you become involved in an investigation of an

4  individual by the name of Belas Rosier?

5  A    Yes, I did.

6  Q    And how is that that that came about?

7  A    Justin Garth -- I was part of a previous investigation that

8  involved the defendant, Justin Garth; and during the search

9  warrant of Justin Garth's residence, several telephones were

10  seized, one of which was searched pursuant to a search warrant.

11  And then the contents of the phone were analyzed, and one of

12  the text message threads that stood out was what we believed to

13  be communications between Justin Garth and a source of supply.

14  Q    Now, if I can ask you, in the Justin Garth case, what drug

15  in particular did you find Mr. Garth in possession of?  Or

16  drugs?

17  A    We found him in possession of fentanyl, fentanyl analogue,

18  cocaine, and cocaine base.

19  Q    Okay.  And with respect to the phone that you found, to

20  follow the order requested by the -- or directed by the Court,

21  number one, did you find communications in Justin Garth's cell

22  phone that related to drug sales by a person to Justin Garth?

23  A    Yes.

24  Q    And specifically, we're talking about Justin Garth buying

25  drugs from that person as opposed to selling them to others.

```
1    A    That's correct.

2    Q    And did that person have a code name or street name that

3    appeared to have been programmed into the phone?

4    A    The contact name was Bizly, B-I-Z-L-Y.

5    Q    Did you want to go and find out who that person was?

6    A    Yes.

7    Q    Did that person appear to be the source of supply for

8    Justin Garth?

9    A    Yes, he did.

10   Q    And what efforts did you take to go and identify who the

11   person Bizly was?

12   A    In the text message thread itself between Garth and Bizly

13   on December 12th, 2021, there was a communication from Bizly to

14   Garth that said -- let me find the page exactly -- page 59 on

15   the exhibit.

16            MR. McMILLAN:  And if it please the Court, Your

17   Honor, I've already showed Defense Counsel what I've marked as

18   Government's Exhibit 6, and it's -- for the record, it's

19   identified as page 59 in the lower right-hand corner.

20            THE COURT:  All right.  So this is page 59 of

21   Government's Exhibit 1 attached to the motion?

22            MR. McMILLAN:  Yes, Your Honor.  May I just confirm

23   that, please.

24            The CM/ECF designation would be page 59 of 179 of

25   docket entry 18-1.  Of course, I have marked this as an
```

```
 1    exhibit, Your Honor, and will, assuming that the Court permits
 2    me to go and put this into evidence, file copies of this for
 3    the record.
 4            THE COURT:  Any objection to admission of this
 5    exhibit for purposes of this hearing, Mr. Fleischman?
 6            MR. FLEISCHMAN:  No objection, Your Honor.
 7            THE COURT:  All right.  Then, yes, you can use it,
 8    and it will be made part of the record for this hearing.
 9            (Government's Exhibit Number 6 admitted into
10     evidence)
11    BY MR. McMILLAN:
12    Q   Special Agent Sullivan, I'm showing you what has been
13    admitted as Government's Exhibit 6.  Do you recognize that
14    item?
15    A   Yes, I do.
16    Q   Where did it come from?
17    A   It's page 59 of the text message thread that was extracted
18    from Justin Garth's phone.
19    Q   And is that one of the communications to Bizly?
20    A   Yes, it is.
21    Q   Was there any sort of identifying information that you
22    found significant on Government's Exhibit 6?
23    A   Yes.  At the very top of the exhibit, it says:  "From:
24    +15613604751 Bizly."  And the contents of the text are:  "Today
25    is my birthday."  The status of it is "read," and the date it
```

```
 1    was received by the telephone was December 12th, 2021, at
 2    approximately 2:39 p.m.
 3    Q    Okay.
 4              MR. McMILLAN:  May I approach the witness with
 5    another exhibit, Your Honor?
 6              THE COURT:  Yes.
 7              MR. McMILLAN:  May I retrieve the exhibit for a
 8    moment, Your Honor?
 9              THE COURT:  Yes.
10    BY MR. McMILLAN:
11    Q    Special Agent Sullivan, was Government's Exhibit 6 supposed
12    to be one page or two?
13    A    One page.
14    Q    Okay.
15    A    That was from the ECF filing.  This was from the reprint
16    that I brought to court today.
17    Q    Okay.
18    A    So if we want to remove the sticker and put it on page 60
19    of 179?
20              THE COURT:  Maybe we're confusing things.  Why don't
21    we just call it Government's Exhibit 1 -- and these are page
22    numbers from Government's Exhibit 1 -- as opposed to
23    introducing a whole new set of government exhibit numbers.
24              MR. McMILLAN:  Yes, Your Honor, that sounds fine, in
25    which case it would be page 60 of 179.
```

```
 1              THE COURT:  Okay.  Thank you.

 2              MR. McMILLAN:  Okay.  And may I approach regarding

 3   Government's Exhibit 1, Your Honor?

 4              THE COURT:  Yes.

 5   BY MR. McMILLAN:

 6   Q    Special Agent Sullivan, did you conduct a check of the

 7   Florida Department of Motor Vehicles database with regard to a

 8   person?

 9   A    Yes, I did.

10   Q    And who is that person that you checked?

11   A    Belas Shelson Rosier.

12   Q    And did you print out a copy of the defendant's DAVID or

13   Florida Department of Motor Vehicles printout for Shelson

14   Rosier?

15   A    Yes, I did.

16   Q    Showing you what's been marked as Government's Exhibit 1,

17   do you recognize this document?

18   A    Yes, I do.

19   Q    Is that the DMV printout for Shelson Rosier?

20   A    Yes, it is.

21   Q    The defendant in this case?

22   A    Yes, it is.

23              MR. McMILLAN:  At this time, I move for the admission

24   of Government's Exhibit 1, Your Honor.

25              MR. FLEISCHMAN:  No objection.
```

```
1              THE COURT:  Okay.
2              (Government's Exhibit Number 1 admitted into
3     evidence)
4              THE COURT:  Mr. McMillan, I don't want to get
5     disorganized with the numbering, so the full text messages that
6     you're seeking admission of, that's Government Exhibit 1
7     attached to your motion?
8              MR. McMILLAN:  Yes, Your Honor.  It's --
9     Mr. Fleischman pointed out that as is attached to the motion,
10    it's apparently on page 60.
11             THE COURT:  Yes.
12             MR. McMILLAN:  However, it's marked 59, as we gave it
13    to him in discovery, and we marked it specifically as
14    Government's Exhibit 6.  I realize it may be confusing.
15             THE COURT:  It's fine.  We have the full text message
16    chain.  I can be pointed to particular pages within the text
17    message chain.  This is something entirely different, so that
18    should get a separate number, but it shouldn't be the same
19    number as the text message chain.
20             MR. McMILLAN:  That's fine, Your Honor.
21             THE COURT:  So maybe that can be 2.
22             MR. McMILLAN:  Yes, Your Honor.
23             THE COURT:  Okay.  So the DAVID printout is
24    Government's 2, the full text message Cellebrite report is
25    Government's 1, and I think -- I don't know if there will be
```

 1   other exhibits, but I'm keeping track this way.

 2           MR. McMILLAN:  Your Honor, I've now marked the DAVID

 3   printout as Government's Exhibit 2.

 4           THE COURT:  Excellent.

 5           MR. McMILLAN:  And I will bring it back to Special

 6   Agent Sullivan.

 7   BY MR. McMILLAN:

 8   Q   I'm now showing you what's been marked as Government's

 9   Exhibit 2.  Is that the DAVID printout that you got for the

10   defendant, Rosier, in this case?

11   A   Yes, it is.

12           MR. McMILLAN:  I move for the admission of

13   Government's Exhibit 2, Your Honor.

14           THE COURT:  Government's 2 is so admitted without

15   objection.

16           (Government's Exhibit Number 2 admitted into

17    evidence)

18   BY MR. McMILLAN:

19   Q   And were you able to go and ascertain from the defendant's

20   DAVID printout, Government's Exhibit 2, what the defendant's

21   registered date of birth is?

22   A   Yes, I was.

23   Q   And what is it?

24   A   It is December 11th, 1991.

25   Q   Does that date of birth correspond with the text message,

1    "Today is my birthday," that you referenced earlier?

2    A    Yes, it does.

3    Q    Now, in addition to finding that clue, did you make any

4    other efforts to go and determine who "Bizly" was?

5    A    Yes.

6    Q    Can you explain those for the Court, please?

7    A    Sure.

8              Subpoenaed the telephone number, and one subpoena

9    went to T-Mobile, another subpoena went to AT&T.

10             THE COURT:  And this is the phone number ending in

11   '4751?

12             THE WITNESS:  Yes, Your Honor.

13             THE COURT:  Okay.

14             MR. McMILLAN:  May I approach the witness, Your

15   Honor?

16             THE COURT:  Yes.

17   BY MR. McMILLAN:

18   Q    Special Agent Sullivan, I'm showing you what has been

19   marked for identification as Government's Exhibits 3 and 4.  Do

20   you recognize these two items?

21   A    Yes, I do.

22   Q    How do you recognize them?

23   A    These are subscriber information from AT&T for Exhibit 3

24   and T-Mobile for Exhibit 4 for the telephone number

25   (561)360-4751.

```
 1   Q    And so the record is clear, who did that number belong

 2   to -- or was -- where did you get that number from?

 3   A    That number is from the text message thread between Justin

 4   Garth and Bizly.  That is the identifying telephone number for

 5   Bizly.

 6              MR. McMILLAN:  Your Honor, at this point, I move for

 7   the admission of Government's Exhibits 3 and 4.

 8              THE COURT:  Any objection?

 9              MR. FLEISCHMAN:  No objection.

10              THE COURT:  All right, 3 and 4 are admitted without

11   objection.

12              (Government's Exhibit Numbers 3 and 4 admitted into

13    evidence)

14   BY MR. McMILLAN:

15   Q    Special Agent Sullivan, if I can direct your attention to

16   Government's Exhibit 3, can you describe for the Court what

17   that is?

18   A    This is AT&T's record of wireless subscription

19   information -- correction -- wireless subscriber information

20   regarding the telephone number (561)360-4751.

21   Q    So that would be the number that Justin Jordan Garth was

22   communicating under the name "Bizly"?

23   A    To Bizly, yes.

24   Q    Okay.  And who is listed as the subscriber of the Bizly

25   phone number?
```

1    A    The financial liable party is Belas Rosier, the billing

2    party is Belas Rosier, the contact name is Belas Rosier, and

3    the contact email address is belasrosier2016@gmail.com.

4    Q    Is there a physical address listed for the person?

5    A    There is, 1026 Woodfield Road, Greenacres, Florida, 33415.

6    Q    Did you later ever encounter anyone in this courtroom at

7    that address?

8    A    Yes.

9    Q    Who is that person?

10   A    The defendant, Mr. Rosier.

11   Q    With respect to Government's Exhibit 4 -- do you have that

12   in front of you?

13   A    I do.

14   Q    Can you please explain what that exhibit is?

15   A    This is similar to 3, except it is a T-Mobile wireless

16   subscriber information.

17   Q    And what number is that record for?

18   A    Same phone number, (561)360-4751.

19   Q    Why are there two records?

20   A    It appears as though the -- that mobile number was

21   transferred from T-Mobile in January of 2022 to AT&T in -- of

22   January 2022.

23   Q    Okay.  And who is the subscriber based on the T-Mobile

24   records reflected in Government's Exhibit 4?

25   A    Subscriber name is Belas Rosier, customer name is Belas

1   Rosier.

2   Q    And is there an address listed for the person on that

3   document?

4   A    Yes.  The address is 1635 Quail Lake Drive, West Palm

5   Beach, Florida, 33409.

6   Q    And again, is that the same address that you said that you

7   encountered Defendant Rosier at the date of his arrest?

8   A    No, that is Mr. Rosier's previous address that is indicated

9   on the DAVID printout.

10  Q    Thank you.

11        Finally, did there come a time when you arrested

12  Shelson Rosier -- or Belas Shelson Rosier?

13  A    Yes.

14  Q    And when was that?

15  A    I don't remember the date of arrest.  I remember the search

16  warrant date, not the arrest date.

17  Q    I apologize.  The question was inartfully posed.

18        When did you execute the search warrant on Belas

19  Shelson Rosier's residence?

20  A    That was June 22nd, 2022.

21  Q    And did you encounter the defendant in the residence on

22  that date?

23  A    Yes.

24  Q    And was there a phone found associated with him in the

25  residence?

1    A    We encountered him in his vehicle, observed him leave the

2    residence but in his rental vehicle, and there were several

3    phones on him, yes.

4    Q    Okay.  Did you subsequently get a search warrant to search

5    those phones?

6    A    They were all iPhone 14s, so those phones as of right now

7    cannot be opened because of the technology hasn't caught up

8    with Apple, so no.

9    Q    So at this point in time, we can't look in them ourselves.

10   A    Correct.

11   Q    But were you able to go and conduct a physical test of some

12   sort to go and determine whether one of those phones had any

13   association with the person named Bizly?

14   A    Yes.

15   Q    What did you do?

16   A    We used another agent's phone and called the (561)360-4751

17   telephone number, and one of the phones that was found on

18   Mr. Rosier at the time of the search warrant received the

19   telephone call from the agent's phone.

20   Q    Thereafter or while you were doing that, did you take a

21   photograph of your observations?

22   A    Yes, two photographs.

23             MR. McMILLAN:  May I approach the witness, Your

24   Honor?

25             THE COURT:  Yes.

```
1    BY MR. McMILLAN:

2    Q    I'm showing you what's been marked for identification as

3    Government's Exhibit 5.  Do you recognize this exhibit?

4    A    I do, yes.

5    Q    How do you recognize it?

6    A    The phone on the left is the agent's phone calling the

7    phone number ending in '4751, and the phone on the right is one

8    of the iPhones that was on Mr. Rosier's person.

9    Q    Were you present when this took place?

10   A    Yes.

11   Q    And does that picture, Government's Exhibit 5, fairly and

12   accurately depict what you saw on that date?

13   A    Yes.

14            MR. McMILLAN:  At this point, I'd move for the

15   admission of Government's Exhibit 5, Your Honor.

16            THE COURT:  Any objection?

17            MR. FLEISCHMAN:  No objection, Your Honor.

18            THE COURT:  Government's 5 is admitted without

19   objection.

20            (Government's Exhibit Number 5 admitted into

21    evidence)

22   BY MR. McMILLAN:

23   Q    And can you describe for the Court what Government's

24   Exhibit 5 shows in terms of those two photographs which phones

25   they were?
```

1   A    The phone on the left is -- has a darker screen color, and

2   it says Belas, in quotes, "Bizly" Rosier, bearing the telephone

3   number (561)360-4751, and that was the agent's phone calling

4   out.  The phone on the right is one of the iPhones that was on

5   the defendant's person upon the execution of the search

6   warrant, and that phone is receiving the agent's phone number

7   ending in '2383.

8   Q    And what did you conclude from those observations?

9   A    That, in fact, Mr. Rosier was, in fact, in possession of

10  the telephone that he was communicating -- the telephone number

11  and telephone that he was communicating with Mr. Garth on.

12  Q    Now, do you recall the Court posed the question as to

13  whether or not there are drug-related communications within

14  what has been marked as Government's Exhibit 1, that is, all

15  the text messages that were attached to the Government's motion

16  to admit 404(b) evidence?

17  A    Yes.

18  Q    Did you compile a list of specific drug-related

19  communications and prepare a spreadsheet of that?

20  A    I prepared a spreadsheet version of the text messages

21  themselves so that I could annotate next to certain text

22  messages what the conversations were -- were regarding, yes.

23  Q    So to answer the Court's question, can you articulate what

24  kind of conversations we can establish and where those

25  conversations are located?

1  A   Yes, we can.

2  Q   And by where they are located, I'm talking about in the

3  approximately -- I think it's about 170 pages of Government's

4  Exhibit 1.

5  A   I don't have the page numbers for the exhibit on the

6  spreadsheet, but we can definitely sift through it and make it

7  work.

8           THE COURT:  Just a few examples, two or three would

9  be sufficient.

10          THE WITNESS:  Shall I start?

11          THE COURT:  Yes, please.

12  A   So if we start on page 1, the defendant -- the previous

13  defendant, Justin Garth, reached out to Bizly and Bizly

14  responded:  "Yes, sir.  What's going on?"

15          And then Mr. Garth says:  "Need another 4."

16          I know that "4" to mean four ounces.

17          Mr. Bizly responds that:  "Half shit already gone,

18  but I'll call my people and see if I *(sic)* got more, give me a

19  few fam," as in family or friend.

20          And then another message, it says:  "I'll let you

21  know."

22          And then they go on and continue, and on the same

23  day, on the 4th, Mr. Garth sends Bizly a message:  "I'll grab 9

24  if you running low."  We know "9" to be 9 ounces.

25          MR. FLEISCHMAN:  Judge, I'm going to object.  Calls

1    for speculation.

2            THE COURT:  You can cross-examine the witness, if you

3    wish.

4            MR. FLEISCHMAN:  Thank you.

5    A    And then Bizly replies:  "Okay.  Yo, I got you four -- I

6    got the 9 for you."

7    Q    If I can interrupt you for a second.

8            Is this your first drug investigation?

9    A    No.

10   Q    How many drug investigations have you conducted in your

11   career?

12   A    Dozens.

13   Q    Would that include people distributing fentanyl?

14   A    Yes.

15   Q    Cocaine?

16   A    Yes.

17   Q    With respect to those dozens of investigations, have you

18   also had occasion to go and interview people that you've

19   arrested for committing drug offenses?

20   A    Yes.

21   Q    Or what we would call debriefings?

22   A    Yes.

23   Q    Have you also participated in electronic surveillance on

24   people engaged in drug trafficking activities?

25   A    Many moons ago, yes.

1    Q    Okay.  And as a result of those, have you become familiar

2    with the terminology used at street-level drug trafficking

3    activities?

4    A    Yes.  And I've also consulted with other much more

5    well-versed narcotics agents to confirm what I thought might be

6    the case.

7    Q    Okay.  I was just trying to place in context your

8    interpretation of these words as to what your experience is; do

9    you understand?

10   A    Yes, I do.

11   Q    Okay.  Turning to another example of these communications,

12   can you relate one to the Court, please?

13   A    Stand by a moment, please.

14         On October 15th, 2021, at approximately 5:25 p.m.,

15   Garth reaches out to Bizly and asked if he's going to be

16   around -- be ready around 7:00.

17         And Bizly responds:  "How many you grabbing?"

18         And then Garth responds:  "I'll do 9."

19         And then Bizly responds:  "You want me to throw

20   another 9 on for you?  I'll give you some time to pay me back."

21         THE COURT:  All right.  I'm satisfied with this.  I

22   just had one final question.

23         The June 22 search warrant, what residence was that

24   conducted --

25         THE WITNESS:  Your Honor, it was 1026 Woodfield, in

```
 1   Greenacres, Florida.
 2             THE COURT:  Okay.
 3             THE WITNESS:  Woodfield Road.
 4             THE COURT:  All right.  Thank you.
 5             Any cross-examination?
 6             MR. FLEISCHMAN:  Yes, Your Honor.
 7             THE COURT:  All right.
 8                       CROSS-EXAMINATION
 9   BY MR. FLEISCHMAN:
10   Q    Good afternoon, Special Agent Sullivan.
11   A    Good afternoon, Mr. Fleischman.
12   Q    Let me ask you first about the -- these text messages and
13   the phone collected from what your testimony is the defendant.
14             Did you find any of these text messages in the phone
15   that you're claiming belonged to Mr. Rosier?
16   A    No.  We never searched Mr. Rosier's phone.
17   Q    Did you search any phones belonging to Rosier that came up
18   with these text messages that are on -- reflected on the phone
19   from Garth?
20   A    No.  I was told we were unable because of technological
21   reasons in late model iPhones.
22   Q    Were you able to subpoena any records directly from Apple?
23   A    No.
24   Q    Did you attempt to?
25   A    I did not.
```

```
1    Q    So as far as seeking a subpoena to obtain what could be
2    text messaging from Apple, that has not been done; is that
3    correct?
4    A    That's correct.
5    Q    At the time that the phone was removed from what you're
6    saying is Rosier, this was in a vehicle; is that correct?
7    A    Yes.
8    Q    There were other people in the vehicle, is that correct?
9    A    There was one other person in the vehicle, if I remember
10   correctly.
11   Q    Did you get the name of that person?
12   A    We do have the name.  I don't recall it if you ask.
13   Q    Okay.  And the fact that Rosier is listed as the subscriber
14   and payor of that phone doesn't mean that he was actually using
15   that phone, is that correct?
16   A    We believe that he was using the phone based on his
17   statement of "today's my birthday," so I couldn't agree with
18   that.
19   Q    Other than that text which I -- you're saying links him to
20   the phone through his birthday, any other collateral evidence
21   that links him to actually being the person behind the phone?
22   A    Besides the subscriber records in his name?
23   Q    Yes.
24   A    And him possessing the phone?
25   Q    Yes.
```

1    A    No, I have nothing else.

2    Q    Did you ever have surveillance on him where he was actually

3    with Garth?

4    A    Not that I recall, no.

5    Q    Did you -- you did collect physical evidence in the Garth

6    case, is that correct?

7    A    Yes.

8    Q    Any packaging, any drug packages that were collected as

9    evidence in Garth's case?

10   A    Yes.

11   Q    Did the DNA or fingerprints of the defendant, Rosier, come

12   up in any of those packages?

13   A    The DNA standard and fingerprint standard for Mr. Rosier

14   had not been yet obtained to make those comparisons.

15   Q    So you have no physical evidence from the actual packages

16   or drug evidence in Garth's case that actually would connect

17   Rosier to that, is that correct?

18   A    Not on the drug packaging or drugs, no.

19   Q    And do you have any surveillance of Mr. Rosier actually

20   delivering Garth anything?

21   A    No.

22   Q    Did you -- during your search of Mr. Rosier's home, did you

23   find anything else that lists the name of "Bizly" in his house

24   where he is using maybe an ID, gift cards, birthday cards,

25   anything that uses the name "Bizly"?

```
 1    A    I don't recall seeing anything else, no.
 2    Q    And when you say that the phone was taken off Rosier, was
 3    it actually on his person or was it in the vehicle when you
 4    stopped that car?
 5    A    I'd have to check with the agent that made the stop.  I
 6    didn't actually make the stop of the vehicle.  I believe it was
 7    in the console or on his person.  I know there was two iPhones
 8    that were directly associated to the defendant, and then there
 9    was -- one of which was the one that was called and responded,
10    and then there was two more iPhones in the back seat of the
11    vehicle.
12    Q    So you cannot say whether or not this was actually on him
13    or just happened to be inside the vehicle.
14    A    I'd have to check the police report and how it was written
15    with the agent.
16    Q    Did you want -- do you have that available?
17    A    I don't have the report here, no.
18    Q    And is there any electronic data, such as cell tower
19    triangulation, anything that links Mr. Rosier to being at or
20    near or actually with the location of Garth?
21    A     In the text messages -- no cell site location, but in the
22    text messages, there are communications where the Bizly
23    telephone is going to meet at Garth's or at Garth's then
24    girlfriend's house.
25    Q     Well, outside of the actual organic text messages, do you
```

```
 1   have anything that actually would place him anywhere with Garth

 2   or at any of these locations noted in the text messages?

 3   A   Outside the text messages, no.

 4   Q   And do you have any independent witnesses that had been

 5   with or around Garth that were able to identify Rosier as his

 6   supplier?

 7   A   No.

 8   Q   And any other electronic surveillance, such as phone

 9   intercepts, phone calls, other witnesses, other phones, or

10   other evidence that you've collected where Bizly is

11   specifically connected to Rosier, outside of these texts?

12   A   Not that I'm aware.

13   Q   Okay.

14           MR. FLEISCHMAN:  That's all I have.  Thank you.

15           THE COURT:  Thank you.

16           Any redirect?

17                       REDIRECT EXAMINATION

18   BY MR. MC MILLAN:

19   Q   Special Agent Sullivan, when the defendant was arrested,

20   you said that there was another person in the car?

21   A   Yes, there was.

22   Q   Did that person also share the date of birth of 12/11 of

23   1991?

24   A   I do not believe so.  I believe that person was an older

25   male that Mr. Rosier referred to as an uncle.
```

1    Q    Okay.  And do you remember the questions you were asked

2    about the -- whether you found DNA or fingerprints on the drug

3    bags that were possessed by Garth?

4    A    Yes, I do.

5    Q    When you searched Defendant Rosier's house, did you find

6    any sort of protective apparel that would make that sort of

7    thing unlikely?

8    A    Yes, I did.

9    Q    What was that?

10   A    Through trash pulls and through the search warrant, we

11   nitrile gloves that would not allow fingerprints to be

12   transmitted directly through the glove on to packaging if you

13   were wearing the glove.

14   Q    Did you compute the total amount of fentanyl that appears

15   to have been traded between Garth and the person known as Bizly

16   that you believe to be Defendant Rosier?

17   A    Yes, I did.

18   Q    What was that quantity?

19   A    Approximately 9 kilograms.

20              MR. McMILLAN:  Thank you.

21              No further questions, Your Honor.

22              THE COURT:  Thank you, Agent.  You may return to

23   counsel table.

24              THE WITNESS:  Thank you, Your Honor.

25              THE COURT:  All right.  I will hear any argument from

```
 1    Mr. Fleischman on the motion, the Government's motion.

 2              MR. FLEISCHMAN:  Good afternoon, Your Honor.

 3              THE COURT:  Good afternoon.

 4              MR. FLEISCHMAN:  Jack Fleischman for Rosier.

 5              This is our response to the Government's position.

 6    So I did want to start out with I believe that the standard

 7    would be preponderance of the evidence as far as proving

 8    whether or not Rosier actually is the person that engaged in

 9    the criminal acts with Garth.

10              THE COURT:  The communications you mean?

11              MR. FLEISCHMAN:  Right.

12              THE COURT:  Okay.

13              MR. FLEISCHMAN:  So our position is that the

14    Government cannot prove that in this case sufficient for -- to

15    even get over the first hurdle that it's likely that a crime

16    occurred, or that they could prove that Rosier actually engaged

17    in distribution with Garth or to Garth.  So that's our first

18    position, that the Government can't prove that by a

19    preponderance of the evidence which would mean that the Court

20    should sustain our objection just at that stage.

21              THE COURT:  But we're talking about -- if you can

22    stay focused on the text messages themselves, that's the

23    subject of their motion.  So why do you think there's

24    insufficient proof?

25              MR. FLEISCHMAN:  Well, first of all, to begin with,
```

1    there was a complete investigation of Garth, surveillance done.

2    There's nothing that ever places Mr. Rosier in the presence of

3    or delivering to Garth.  There's no independent witnesses,

4    there's no physical evidence collectively, DNA, fingerprints,

5    that places him -- Mr. Rosier as having delivered drugs to

6    Mr. Garth.

7            Although the name "Bizly" shows up in the text and

8    apparently whoever texted that has the same date of birth as

9    Rosier certainly is suspicious, but they haven't proven that's

10   actually Rosier.  More than one person can have Rosier's date

11   of birth.

12           It's unclear, I would say at this stage, whether the

13   phone was taken off of him or simply in the vehicle.

14           The fact that his name is listed as the payor of that

15   account and that the account is under his name does not mean

16   that he was actually using that phone that's engaged in

17   distribution of drugs with Garth.

18           And again, more broadly, there's literally -- there's

19   no independent evidence, other than the text messages

20   themselves, that Rosier was distributing drugs to Garth.

21           And there's certainly no evidence that proves his

22   identification.  Nothing else was found in the home that used

23   the term "Bizly."  No independent witnesses, including

24   witnesses surrounding Garth.  There's no cell tower

25   triangulation in this case.  And no text messages were found in

```
1    any other phones that belong to the defendant, including

2    records that could be potentially subpoenaed from Apple that

3    would have those text messages, that those text messages are in

4    any phones that were purported to be purportedly held by or

5    used by Mr. Rosier.

6              So we believe -- our position is that they could not

7    prove by a preponderance of the evidence that Rosier is the

8    person at the other end of those texts.

9              THE COURT:  All right.  Thank you.

10             Any other arguments in opposition to the motion?

11             MR. FLEISCHMAN:  Yes, Your Honor.

12             THE COURT:  Okay.

13             MR. FLEISCHMAN:  I did put this in the written, but

14   I'll just touch briefly.

15             As alleged, the acts are dissimilar.  In the issue

16   with Garth, there were actual purported sales or actual

17   distribution.  In this -- the case in chief, these are merely

18   possessory where they found drugs in the home.

19             THE COURT:  But it's possession with intent to

20   distribute, right?

21             MR. FLEISCHMAN:  It is, but --

22             THE COURT:  Okay.

23             MR. FLEISCHMAN:  -- it's not direct sales, from our

24   perspective.

25             THE COURT:  I'm not really sure I see the
```

1    distinction, this purported dissimilarity.  Can you flesh that

2    out again?

3            MR. FLEISCHMAN:  Yes.  In Garth, it looks like that

4    there were -- the Government is alleging that there were direct

5    distributive acts on the part of Mr. Rosier.  In the case in

6    chief, they do a search warrant of the home, they find drugs,

7    the drugs are a large amount, and the Government is saying that

8    if, in light most favorable to them, they can prove knowledge

9    and control, then that amount would be an amount that would be

10   for distribution.

11           THE COURT:  Okay.

12           All right.  Any other arguments, Mr. Fleischman?

13           MR. FLEISCHMAN:  Yes.  I've already touched on that

14   we believe there's insufficient proof that the Government has

15   that Rosier committed the extrinsic acts.

16           I did want to touch on the -- just briefly, the issue

17   of intent because I -- that to me is our weakest argument.  The

18   Eleventh Circuit is fairly broad on using intent for -- or

19   404(b) for -- being used for intent.  So this is my position on

20   behalf of Mr. Rosier is that the Government would not need

21   these extrinsic acts to prove intent if they can prove that

22   Rosier had knowledge and control over these drugs because this

23   is not like they found a small amount of drugs.  I mean, these

24   are packaged, you know, fairly large amounts of drugs.  So

25   they -- if they can carry their burden of proof that Rosier had

1    knowledge and control over these drugs that were found, they

2    would not need extrinsic evidence of what they're saying were

3    deliveries to prove possessing it with intent, that the amounts

4    themselves would be sufficient.

5            So allowing this into evidence, there is obviously

6    some probative value to it, but it outweighs the prejudicial

7    value.  It paints Rosier in a terrible light.  It paints him as

8    a drug dealer, criminal, and is not necessary in the light most

9    favorable to the Government on what was actually found in the

10   house to assist them in proving intent.

11           So for all those reasons and what I outlined in our

12   written response, we're asking the Court to sustain our

13   objection and not allow the Government to introduce as evidence

14   in their case in chief.

15           THE COURT:  All right.  Thank you.

16           Mr. McMillan, any brief rebuttal?  And then I'd like

17   to rule on the motion.

18           MR. McMILLAN:  Just briefly, Your Honor.

19           I think, as the Court has already touched upon,

20   there's really not a distinction between possession with intent

21   to distribute and distribution.  In fact, I would submit to the

22   Court that what better evidence of intent to distribute is

23   there but distributions of the same drugs occurring within

24   close proximity chronologically to the charged offense.

25           Basically, Mr. Fleischman's arguments have just I

1    think more conclusively established the need the Government has

2    to go and use this evidence to establish that the defendant

3    possessed the fentanyl involved with the intent to distribute

4    it.  Unless the defendant is willing to go and stipulate that

5    he possessed it with the intent to distribute, he's clearly put

6    all these issues in controversy.  And under Eleventh Circuit

7    case law, we would respectfully submit to the Court that none

8    of these items are more prejudicial or unfairly prejudicial

9    than probative.  And, of course, any relevant evidence is

10   necessarily prejudicial.  It's just a question as to whether

11   it's unfairly or unduly prejudicial, and we would submit to the

12   Court, where we have an identity of the same type of controlled

13   substances, close proximity, and where the intent is

14   essentially the same involved instances, that Eleventh Circuit

15   case law firmly and conclusively has established on numerous

16   occasions that the Court would not be going beyond its purview

17   in allowing this evidence.  Under the circumstances present in

18   this case, it would not be abusing its discretion.

19            Unless Your Honor has any questions, that would

20   conclude our presentation.

21            THE COURT:  My final question is -- I know you

22   preserve an argument about inextricably intertwined.  What do

23   you think most fairly is the proper legal framework to apply to

24   this evidence?

25            MR. McMILLAN:  Well, Your Honor, with respect to the

```
 1    inextricably intertwined argument, if it were my preference, I
 2    believe that the Court can find, under the case law I
 3    articulated, that this was inextricably intertwined evidence
 4    because it is necessary to complete the story.  As you heard
 5    from Special Agent Sullivan, the only reason why we know about
 6    Bizly and Mr. Rosier and subsequently found through the
 7    issuance of a federal search warrant him in possession of a
 8    large quantity and stockpile of fentanyl and cocaine and the
 9    fentanyl analogue is precisely because of these text
10    communications between one another.  So I believe that since
11    it's not a completely separate incident, this could be all
12    charged in -- as one conspiracy.
13           THE COURT:  But it wasn't, right?  I guess what do
14    you mean -- and I see this a lot, "it's necessary to complete
15    the story"?  What do we mean exactly?
16           MR. McMILLAN:  Well, Your Honor, I suppose that one
17    could go and just present this in a vacuum and say that Special
18    Agent Sullivan just showed up with a search warrant and found
19    drugs in the defendant's house.  But I believe that a jury
20    would expect to have some explanation as to how we got to that
21    point.  You know, what basis did you have, Special
22    Agent Sullivan -- and especially in this day and age, Your
23    Honor, what basis did you have that wasn't based on some
24    improper motive or purpose for suspecting Mr. Rosier of being a
25    drug dealer?
```

 1            So I submit that he should be and ought to be

 2    entitled to explain the investigative steps he came to go and

 3    get that search warrant which included finding evidence that

 4    Mr. Justin Jordan Garth was a drug dealer and that in his

 5    possession was a communications device that identified, based

 6    on the text messages we have submitted to the Court, his source

 7    of supply for the fentanyl, fentanyl analogue, and cocaine he

 8    was selling.  I believe that that's necessary and appropriate

 9    evidence.

10            THE COURT:  Okay.  Thank you.  Thank you.  I'm

11    familiar with the arguments.

12            MR. McMILLAN:  Thank you, Your Honor.

13            THE COURT:  All right.

14            Okay.  Upon consideration of the motion along with

15    the exhibits submitted by the Government and the testimony of

16    Agent Sullivan, along with the arguments presented today and in

17    the written filings, I am going to grant the Government's

18    motion under 404(b).  I think there is an argument to be made

19    that it's inextricably intertwined, but I'm not sure that

20    argument would get you to full-blown admission of the text

21    messages themselves as opposed to some other more generalized

22    sort of overview, and so I think the more appropriate legal

23    framework is 404(b), and I do believe the legal requirements

24    have been satisfied.

25            I am also very confident that there is that

1    preponderance of the evidence which is being challenged.  We

2    have not only the text messages themselves with the phone

3    number that links back to the defendant through subscriber

4    records, and this is again close temporally, we have the

5    birthday verification, which is again an additional clue of

6    identity; and so although the defendant has presented, you

7    know, some arguments potentially for cross-examination to poke

8    holes in the Government's evidence and insinuate that more

9    evidence could exist, that is not, in the Court's view, a basis

10   to exclude the evidence or to find that that preponderance

11   standard hasn't been met given what is in the record which, as

12   I've noted, consists of the subscriber records, the birthday

13   connection along with the screen shot taken on the June 22nd,

14   2022, date showing a phone in the defendant's possession

15   ringing when called by the agent.  So all of that together is,

16   I think, more than sufficient for 404(b) purposes.

17          With respect to the 403 challenge, I don't find it

18   convincing.  I think this evidence is highly probative to the

19   issues of intent and knowledge which are squarely in dispute.

20   It is fentanyl in both cases, and although the defendant has

21   made an argument about some legal distinction between

22   possession versus distribution, we are, in fact, talking about

23   possession with intent to distribute, and so I think there is

24   quite a lot of similarity; and again, this is very close in

25   time.  So for all of those reasons, the Government's motion

```
 1    will be granted, and the text messages attached to the
 2    Government's motion I think are properly admitted under 404(b).
 3              Now, Mr. Rosier, if you have any other objections to
 4    raise to that evidence at trial, you can raise those
 5    objections; but as far as 404(b) is concerned [sic] an
 6    admission at this point, I am satisfied that those 404(b)
 7    requirements are met and I think this does fall comfortably
 8    within the Eleventh Circuit case law cited by the Government.
 9              All right.  I note that there is a June 1 deadline
10    for the submission of pretrial motions.
11              Mr. Fleischman, do you anticipate any other motions?
12              MR. FLEISCHMAN:  Judge, there may be a motion
13    regarding DNA evidence.  I was actually -- we just got -- the
14    Government, with their help, got us the like behind-the-curtain
15    DNA material, so I'm just getting started going through it.  I
16    was going to file a motion to extend that deadline because I
17    don't think we would have time to engage the DNA expert that we
18    wanted to, to review this in time to file any -- whether it be
19    a Daubert or motion in limine.
20              THE COURT:  All right.  Well, you'll have to just
21    file a potion for a continuance explaining when it is that you
22    came about this evidence and what additional investigation is
23    necessary.  At this point, though, I've seen that deadline
24    extended I think at least once before, as has been the trial
25    period, so I do want to be conservative here with the
```

```
 1    additional extensions.  But if you want to file a motion

 2    detailing exactly why you need more time and sort of the

 3    anticipated basis of your motion, then I'm happy to consider

 4    it.

 5          MR. FLEISCHMAN:  Okay.

 6          THE COURT:  All right.

 7          Any other matters to address before we recess,

 8    Mr. McMillan?

 9          MR. McMILLAN:  Your Honor, I would like to alert,

10    because I don't want to make Your Honor upset later -- you'll

11    notice that this was charged by information.

12          THE COURT:  Yes.

13          MR. McMILLAN:  I'm just trying to alert the Court

14    that we may go and do an indictment in this case, which would

15    include the conspiracy charge I referred to earlier, and I just

16    don't want the Court to say why didn't I tell you now.  I'm

17    going to talk to Defense Counsel about that.  I'm not trying to

18    ask the Court to intervene in any of those type of things, but

19    I just didn't want to catch Your Honor off guard, so I thought

20    I should mention it.  That still gives us plenty of time before

21    the set trial date, 30 days and more, but I just didn't want to

22    do this and not have alerted Your Honor ahead of time.

23          THE COURT:  Okay.  All right.  Well, thank you for

24    the information.  At this point, all we have is an information.

25          All right.  I have nothing else.
```

1          Mr. Fleischman, anything further from your end?

2          MR. FLEISCHMAN:  No, Your Honor.

3          THE COURT:  All right.  Well, then, I appreciate your

4     argument and your presentation today.  Mr. McMillan, if you

5     could please insure to have those exhibits filed in the proper

6     numbering within ten days of today's hearing with a coversheet

7     listing them out by number to keep things orderly, I would

8     appreciate it.

9          And I wish you all a good rest of the day.  Thank

10    you.

11         MR. McMILLAN:  Thank you, Your Honor.

12         And just for a point of clarification, for the

13    Government's Exhibit 1 which, as I understood, was the entirety

14    and that was filed with my motion, may I consider that to have

15    been filed already?

16         THE COURT:  In my estimation, yes; but just to keep

17    them all together, you should reinclude it as Government's 1,

18    and that's the full composite 179-page exhibit.

19         MR. McMILLAN:  Thank you, Your Honor.  I'll do so.

20         THE COURT:  Okay.  Thank you.

21         THE COURTROOM DEPUTY:  All rise.

22              (PROCEEDINGS ADJOURNED AT 2:19 P.M.)

23

24

25

1        **C–E–R–T–I–F–I–C–A–T–E**

2              I hereby certify that the foregoing is

3        an accurate transcription and proceedings in the

4        above–entitled matter.,

5

**8/30/2023**                    **/s/DIANE MILLER**

6     DATE                    DIANE MILLER, RMR, CRR, CRC
                              Official Court Reporter
7                              United States District Court
                              101 South U.S. Highway 1
8                              Fort Pierce, FL  34950
                              772–467–2337

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES vs. BELAS SHELSON ROSIER
Case 9:23-cr-80045-AMC   Document 49   Entered on FLSD Docket 09/11/2023   Page 49 of 56

Page 49

**BY MR.
FLEISCHMAN:
[1]** 30/9
**BY MR.
McMILLAN: [10]**
12/19 15/11 16/10
17/5 19/7 19/18
20/17 21/14 25/1
25/22
**MR.
FLEISCHMAN:
[25]** 2/13 2/19
2/21 15/6 17/25
21/9 25/17 27/25
28/4 30/6 34/14
36/2 36/4 36/11
36/13 36/25 38/11
38/13 38/21 38/23
39/3 39/13 45/12
46/5 47/2
**MR. McMILLAN:
[48]** 2/8 4/1 4/5
4/12 4/19 5/24 6/1
7/18 8/2 8/6 8/21
9/5 9/13 9/19
10/15 11/12 11/17
11/22 12/1 12/10
12/16 14/16 14/22
16/4 16/7 16/24
17/2 17/23 18/8
18/12 18/20 18/22
19/2 19/5 19/12
20/14 21/6 24/23
25/14 35/20 40/18
41/25 42/16 43/12
46/9 46/13 47/11
47/19
**THE COURT: [81]**

**THE
COURTROOM
DEPUTY: [3]** 2/4
12/13 47/21
**THE
DEFENDANT: [1]**
3/2
**THE WITNESS:
[6]** 12/15 20/12
27/10 29/25 30/3
35/24

'

**'2383 [1]** 26/7
**'4751 [2]** 20/11
25/7
**'58 [1]** 6/15

/

**/s/DIANE [1]** 48/5

1

**101 [2]** 1/15 48/7
**1026 [2]** 22/5
29/25
**109 [1]** 1/19
**11 [1]** 34/22
**11th [1]** 19/24
**12/11 [1]** 34/22
**1273 [1]** 5/13
**12th [2]** 14/13
16/1
**1355 [1]** 6/15
**1357 [2]** 6/15 6/17
**1365 [1]** 6/17
**139 F.3d 1355 [1]**
6/15
**14s [1]** 24/6
**1552 [1]** 5/20
**15613604751 [1]**
15/24
**1562 [1]** 5/20
**15th [1]** 29/14
**1635 [1]** 23/4
**16th [1]** 3/15
**170 [1]** 27/3
**179 [3]** 14/24
16/19 16/25
**179-page [1]**
47/18
**17th [1]** 3/14
**18 [3]** 3/8 5/2 8/23
**18-1 [1]** 7/25
**1978 [1]** 4/23
**1991 [2]** 19/24
34/23
**1994 [1]** 5/20
**1995 [1]** 6/18
**1998 [1]** 6/16

2

**2003 [2]** 5/14 5/15
**2007 [1]** 12/24
**2021 [4]** 9/1 14/13
16/1 29/14

**2022 [6]** 3/18 9/2
22/21 22/22 23/20
44/14
**2023 [2]** 1/4 48/5
**21 [1]** 4/5
**2161 [1]** 1/18
**22 [2]** 9/4 29/23
**22nd [3]** 3/18
23/20 44/13
**23 [1]** 1/4
**23-80045-CRIMIN
AL-CANNON [1]**
1/2
**2337 [2]** 1/24 48/8
**27 [1]** 3/12
**2:19 [1]** 47/22
**2:39 p.m [1]** 16/2
**2nd [1]** 1/19

3

**30 days [1]** 46/21
**3100 [1]** 1/15
**33409 [1]** 23/5
**33415 [1]** 22/5
**341 F.3d 1273 [1]**
5/13
**34950 [3]** 1/16
1/19 48/8
**36 F.3d 1552 [1]**
5/20
**360-4751 [5]**
20/25 21/20 22/18
24/16 26/3

4

**400 grams [3]**
3/20 4/3 4/9
**403 [1]** 44/17
**404 [14]** 3/7 4/20
5/1 5/15 5/16 6/10
26/16 39/19 43/18
43/23 44/16 45/2
45/5 45/6
**467-2337 [1]** 1/24
**4751 [5]** 20/25
21/20 22/18 24/16
26/3
**4th [2]** 9/1 27/23

5

**56 [1]** 1/7
**56 F.3d 1357 [1]**
6/17

**561 [5]** 20/25
21/20 22/18 24/16
26/3
**582 F.2d [1]** 4/22
**59 [6]** 14/14 14/19
14/20 14/24 15/17
18/12
**5:25 p.m [1]**
29/14

6

**60 [3]** 16/18 16/25
18/10

7

**758 Federal [1]**
6/6
**772 [1]** 1/24
**772-467-2337 [1]**
48/8
**7:00 [1]** 29/16

8

**8/30/2023 [1]** 48/5
**80045 [1]** 2/5
**817 [1]** 6/6
**822-823 [1]** 6/6
**823 [1]** 6/6
**841 [3]** 4/6 4/10
4/11
**898 [1]** 4/22
**8th [1]** 9/2

9

**9 kilograms [1]**
35/19
**9 ounces [1]**
27/24
**911 [1]** 4/22

A

**ability [1]** 10/24
**above [1]** 48/4
**above-entitled [1]**
48/4
**absent [1]** 6/11
**abusing [1]** 41/18
**accordingly [1]**
5/16
**account [2]** 37/15
37/15
**accurately [1]**
25/12
**act [1]** 5/7

**activities [2]**
28/24 29/3
**acts [5]** 36/9
38/15 39/5 39/15
39/21
**addition [1]** 20/3
**address [8]** 22/3
22/4 22/7 23/2
23/4 23/6 23/8
46/7
**ADJOURNED [1]**
47/22
**admission [8]**
15/4 17/23 18/6
19/12 21/7 25/15
43/20 45/6
**admit [1]** 26/16
**admitted [10]**
15/9 15/13 18/2
19/14 19/16 21/10
21/12 25/18 25/20
45/2
**affirmative [1]**
6/11
**affirmed [1]** 5/15
**afternoon [8]** 2/2
2/8 2/12 2/13
30/10 30/11 36/2
36/3
**age [1]** 42/22
**agent [21]** 2/10
9/14 11/15 12/12
12/20 15/12 16/11
17/6 19/6 20/18
21/15 30/10 33/5
33/15 34/19 35/22
42/5 42/18 42/22
43/16 44/15
**Agent Anderson
[2]** 2/10 9/14
**Agent Sullivan
[14]** 11/15 12/20
15/12 16/11 17/6
19/6 20/18 21/15
30/10 34/19 42/5
42/18 42/22 43/16
**agent's [5]** 24/16
24/19 25/6 26/3
26/6
**agents [2]** 10/1
29/5
**aid [1]** 2/17
**AILEEN [1]** 1/10

**A**

alert [2]  46/9 46/13
alerted [1]  46/22
alias [1]  11/7
alleged [2]  3/23 38/15
alleging [1]  39/4
allow [2]  35/11 40/13
allowing [2]  40/5 41/17
alone [1]  6/22
although [3]  37/7 44/6 44/20
AMERICA [1]  1/3
amount [6]  3/21 35/14 39/7 39/9 39/9 39/23
amounts [2]  39/24 40/3
analogue [7]  4/4 4/7 4/10 7/1 13/17 42/9 43/7
analyzed [1]  13/11
Anderson [4]  2/10 9/14 12/12 12/15
annotate [1]  26/21
answer [1]  26/23
anticipate [1]  45/11
anticipated [1]  46/3
apologize [1]  23/17
apparel [1]  35/6
appearance [1]  2/6
APPEARANCES [1]  1/13
Appendix [1]  6/6
Appendix 817 [1]  6/6
Apple [4]  24/8 30/22 31/2 38/2
apply [1]  41/23
appreciate [2]  47/3 47/8
approach [4]  16/4

17/2 20/14 24/23
aren't [1]  6/1
argument [9]  4/18 35/25 39/17 41/22 42/1 43/18 43/20 44/21 47/4
arguments [6]  38/10 39/12 40/25 43/11 43/16 44/7
arrest [3]  23/7 23/15 23/16
arrested [6]  8/7 9/25 10/1 23/11 28/19 34/19
articulate [1]  26/23
articulated [4]  4/25 5/9 8/21 42/3
ascertain [1]  19/19
assist [1]  40/10
associated [3]  4/7 23/24 33/8
association [1]  24/13
assuming [1]  15/1
attached [7]  3/8 11/20 14/21 18/7 18/9 26/15 45/1
attempt [1]  30/24
Attorney [1]  1/14
audio [1]  2/25
AUSA [1]  1/14

**B**

B-E-E-C-H-U-M [1]  4/22
B-I-Z-L-Y [2]  8/13 14/4
bags [1]  35/3
base [1]  13/18
basis [4]  42/21 42/23 44/9 46/3
Beach [3]  1/18 12/22 23/5
bearing [1]  26/2
Beechum [4]  4/21 4/24 5/3 8/15
behind [2]  31/21 45/14
BELAS [15]  1/6 2/4 2/14 9/11 12/9

13/4 17/11 22/1 22/2 22/2 22/25 22/25 23/12 23/18 26/2
belasrosier2016 [1]  22/3
belong [2]  21/1 38/1
belonged [1]  30/15
belonging [1]  30/17
Besides [1]  31/22
beyond [2]  6/25 41/16
billing [1]  22/1
birth [5]  19/21 19/25 34/22 37/8 37/11
birthday [9]  9/21 9/23 15/25 20/1 31/17 31/20 32/24 44/5 44/12
Bizly [39]  8/12 9/11 9/17 9/20 9/21 10/4 10/8 11/7 12/8 14/4 14/11 14/12 14/13 15/19 15/24 20/4 21/4 21/5 21/22 21/23 21/24 24/13 26/2 27/13 27/13 27/17 27/23 28/5 29/15 29/17 29/19 32/23 32/25 33/22 34/10 35/15 37/7 37/23 42/6
blown [1]  43/20
book [1]  4/13
brief [2]  11/25 40/16
broad [1]  39/18
broadly [1]  37/18
brother [1]  7/22
brothers [2]  7/18 7/21
burden [2]  6/9 39/25

**C**

C-E-R-T-I-F-I-C-A-T-E [1]  47/23
CANNON [2]  1/2

1/10
car [2]  33/4 34/20
cards [2]  32/24 32/24
career [1]  28/11
carry [1]  39/25
catch [1]  46/19
caught [1]  24/7
cell [6]  8/10 10/6 13/21 33/18 33/21 37/24
Cellebrite [1]  18/24
cellular [1]  8/8
central [1]  5/18
certify [1]  48/2
chain [4]  12/6 18/16 18/17 18/19
chains [1]  11/10
challenge [1]  44/17
challenged [1]  44/1
character [3]  5/4 5/9 10/14
charge [3]  3/15 9/3 46/15
charged [5]  7/4 9/7 40/24 42/12 46/11
chief [3]  38/17 39/6 40/14
chronologically [1]  40/24
Circuit [14]  4/23 4/23 5/13 5/14 5/20 6/5 6/13 6/16 6/17 6/18 39/18 41/6 41/14 45/8
circumstances [1]  41/17
cited [4]  6/13 6/16 10/21 45/8
citing [1]  5/18
claiming [1]  30/15
clarification [1]  47/12
clarify [1]  7/15
clear [1]  21/1
close [4]  40/24 41/13 44/4 44/24
clue [2]  20/3 44/5

CM [1]  14/24
CM/ECF [1]  14/24
cocaine [8]  3/22 7/1 7/14 13/18 13/18 28/15 42/8 43/7
code [2]  4/6 14/2
coded [2]  10/17 10/18
collateral [1]  31/20
collect [1]  32/5
collected [3]  30/13 32/8 34/10
collectively [1]  37/4
color [1]  26/1
comfortably [1]  45/7
committed [2]  5/7 39/15
committing [1]  28/19
commonly [1]  3/22
communicating [4]  10/7 21/22 26/10 26/11
communication [2]  11/14 14/13
communications [17]  7/13 8/10 8/17 9/20 10/11 10/18 11/6 13/13 13/21 15/19 26/13 26/19 29/11 33/22 36/10 42/10 43/5
comparisons [1]  32/14
compilation [1]  7/25
compile [1]  26/18
complete [3]  37/1 42/4 42/14
composite [1]  47/18
compute [1]  35/14
conclude [2]  26/8 41/20
conclusively [2]  41/1 41/15
conduct [2]  17/6

## C

conduct... [1] 24/11
conducted [4] 8/8 10/1 28/10 29/24
confident [1] 43/25
confirm [3] 5/21 14/22 29/5
confusing [2] 16/20 18/14
connect [1] 32/16
connected [1] 34/11
connection [1] 44/13
conservative [1] 45/25
consideration [1] 43/14
consistently [2] 5/14 10/16
consists [1] 44/12
console [1] 33/7
conspiracy [4] 6/20 6/22 42/12 46/15
consulted [1] 29/4
containing [2] 3/9 3/21
contents [3] 7/16 13/11 15/24
context [1] 29/7
continuance [1] 45/21
control [3] 39/9 39/22 40/1
controlled [3] 3/17 3/19 41/12
controversy [1] 41/6
convicted [1] 8/25
convictions [1] 6/2
convincing [1] 44/18
corner [1] 14/19
correction [1] 21/19

correspond [1] 19/25
corresponds [1] 9/22
counsel's [1] 2/9
court [33] 1/1 1/23 3/5 4/20 4/25 6/7 6/18 9/13 10/16 12/2 13/20 14/16 15/1 16/16 20/6 21/16 25/23 26/12 29/12 36/19 40/12 40/19 40/22 41/7 41/12 41/16 42/2 43/6 46/13 46/16 46/18 48/6 48/7
Court's [2] 26/23 44/9
courtroom [1] 22/6
coversheet [1] 47/6
CRC [1] 48/6
Creole [1] 2/21
crime [1] 36/15
criminal [4] 1/2 2/5 36/9 40/8
crisp [1] 8/5
cross [4] 28/2 30/5 30/8 44/7
cross-examination [3] 30/5 30/8 44/7
cross-examine [1] 28/2
CRR [2] 1/23 48/6
curtain [1] 45/14
customer [1] 22/25

## D

darker [1] 26/1
data [2] 9/24 33/18
database [1] 17/7
Daubert [1] 45/19
DAVID [6] 17/12 18/23 19/2 19/9 19/20 23/9
deadline [3] 45/9 45/16 45/23
dealer [3] 40/8

42/25 43/4
debriefings [1] 28/21
December 11th [1] 19/24
December 12th [2] 14/13 16/1
decisions [1] 6/13
defendant [37] 1/7 1/18 2/14 5/6 6/7 6/11 6/25 7/3 7/17 8/1 8/18 8/24 9/23 9/24 10/10 11/8 12/8 13/8 17/21 19/10 22/10 23/7 23/21 27/12 27/13 30/13 32/11 33/8 34/19 35/5 35/16 38/1 41/2 41/4 44/3 44/6 44/20
Defendant Rosier [2] 8/24 11/8
Defendant Rosier's [1] 9/23
defendant's [12] 3/10 5/4 7/7 9/17 10/2 10/6 17/12 19/19 19/20 26/5 42/19 44/14
Defense [2] 14/17 46/17
Delgado [2] 6/17 6/18
delivered [1] 37/5
deliveries [1] 40/3
Department [2] 17/7 17/13
depict [1] 25/12
description [1] 8/5
designation [1] 14/24
detectable [1] 3/21
device [1] 43/5
dialed [1] 10/6
diane [4] 1/23 1/24 48/5 48/6
difference [1] 4/2
direct [4] 12/18

21/15 38/23 39/4
directed [1] 13/20
discovery [1] 18/13
discretion [1] 41/18
disorganized [1] 18/5
dispute [1] 44/19
dissimilar [1] 38/15
dissimilarity [1] 39/1
distinction [3] 39/1 40/20 44/21
distribute [10] 3/17 6/23 7/2 7/9 38/20 40/21 40/22 41/3 41/5 44/23
distributing [2] 28/13 37/20
distribution [8] 7/12 7/13 36/17 37/17 38/17 39/10 40/21 44/22
distributions [1] 40/23
distributive [1] 39/5
DISTRICT [4] 1/1 1/1 1/11 48/7
DMV [1] 17/19
DNA [7] 32/11 32/13 35/2 37/4 45/13 45/15 45/17
docket [5] 3/8 3/12 5/2 8/23 14/25
docketed [1] 7/24
document [2] 17/17 23/3
dollars [1] 11/5
doubt [1] 6/25
dozens [2] 28/12 28/17
driver's [1] 9/23
drug [22] 6/8 6/19 6/20 8/25 10/23 13/1 13/14 13/22 26/13 26/18 28/8 28/10 28/19 28/24 29/2 32/8 32/16 32/18 35/2 40/8

42/25 43/4
drug-related [2] 26/13 26/18

## E

ECF [2] 14/24 16/15
efforts [2] 14/10 20/4
electronic [3] 28/23 33/18 34/8
element [1] 8/15
elements [1] 7/4
Eleventh [12] 4/23 5/13 5/14 5/20 6/5 6/13 6/16 6/17 39/18 41/6 41/14 45/8
email [1] 22/3
encounter [2] 22/6 23/21
encountered [2] 23/7 24/1
engage [2] 6/20 45/17
engaged [4] 28/24 36/8 36/16 37/16
entirely [1] 18/17
entirety [1] 47/13
entitled [2] 43/2 48/4
entry [5] 3/8 3/12 5/2 8/23 14/25
entry 18 [3] 3/8 5/2 8/23
entry 18-1 [1] 14/25
entry 27 [1] 3/12
especially [1] 42/22
ESQ [1] 1/18
essentially [3] 9/16 10/17 41/14
establish [4] 7/5 7/9 26/24 41/2
established [2] 41/1 41/15
establishing [1] 11/6
estimation [1] 47/16
event [1] 9/7

Page 52

UNITED STATES vs. BELAS SHELSON ROSIER
Case 9:23-cr-80045-AMC Document 49 Entered on FLSD Docket 09/11/2023 Page 52 of 56

## E

evidence [49]
Evidence 404 [1] 3/7
examination [5] 12/18 30/5 30/8 34/17 44/7
examine [1] 28/2
examples [3] 10/12 10/15 27/8
exceeded [1] 5/5
Excellent [1] 19/4
excerpts [1] 12/6
exclude [1] 44/10
excluded [1] 5/17
execute [1] 23/18
execution [1] 26/5
Exhibit 1 [14] 5/22 7/16 8/5 8/24 14/21 16/21 16/22 17/3 17/16 17/24 18/6 26/14 27/4 47/13
Exhibit 2 [4] 19/3 19/9 19/13 19/20
Exhibit 3 [2] 20/23 21/16
Exhibit 4 [3] 20/24 22/11 22/24
Exhibit 5 [4] 25/3 25/11 25/15 25/24
Exhibit 6 [5] 14/18 15/13 15/22 16/11 18/14
Exhibits 3 [2] 20/19 21/7
exist [1] 44/9
experience [1] 29/8
expert [2] 10/23 45/17
explanation [1] 42/20
extend [1] 45/16
extended [1] 45/24
extensions [1] 46/1
extracted [1] 15/17
extrinsic [4] 5/7

## F

39/15 39/21 40/2

F.2d [1] 4/22
F.3d [4] 5/13 5/20 6/15 6/17
fact [7] 5/15 26/9 26/9 31/13 37/14 40/21 44/22
fall [1] 45/7
fam [1] 27/19
family [1] 27/19
favorable [2] 39/8 40/9
federal [3] 3/7 6/6 42/7
fentanyl [18] 3/20 3/22 4/3 4/7 4/7 7/1 7/1 7/13 13/17 13/17 28/13 35/14 41/3 42/8 42/9 43/7 43/7 44/20
Fifth [1] 4/22
file [5] 15/2 45/16 45/18 45/21 46/1
filings [1] 43/17
final [2] 29/22 41/21
finally [3] 5/6 9/24 23/11
financial [1] 22/1
fingerprint [1] 32/13
fingerprints [2] 32/11 35/2 35/11 37/4
firmly [1] 41/15
FL [1] 48/8
FLEISCHMAN [12] 1/18 2/14 2/15 2/18 15/5 18/9 30/11 36/1 36/4 39/12 45/11 47/1
Fleischman's [1] 40/25
flesh [1] 39/1
FLORIDA [11] 1/1 1/6 1/16 1/19 9/23 12/22 17/7 17/13 22/5 23/5 30/1
flsd.uscourts.gov [1] 1/24

focused [1] 36/22
foregoing [1] 48/2
forgive [1] 7/20
FORT [4] 1/6 1/16 1/19 48/8
four ounces [1] 27/16
framework [2] 41/23 43/23
friend [1] 27/19
front [1] 22/12
full-blown [1] 43/20

## G

Garth [53]
Garth's [8] 11/7 13/9 13/21 15/18 32/9 32/16 33/23 33/23
general [1] 11/3
generalized [1] 43/21
gift [1] 32/24
girlfriend's [1] 33/24
gives [1] 46/20
glove [2] 35/12 35/13
gloves [1] 35/11
gmail.com [1] 32/13
government [21] 2/7 5/22 6/10 6/24 8/23 10/12 12/12 16/23 18/6 36/14 36/18 39/4 39/7 39/14 39/20 40/9 40/13 41/1 43/15 45/8 45/14
Government's [53]
Government's 1 [4] 7/24 8/18 18/25 47/17
Government's 2 [1] 18/24
Government's 5 [1] 25/18
grab [1] 27/23
grabbing [1] 29/17

gram [1] 11/4
grams [5] 3/20 3/20 4/3 4/3 4/9
grant [1] 43/17
granted [1] 45/1
great [1] 3/3
Greenacres [2] 22/5 30/1
groundwork [1] 4/16
guard [1] 46/19
guilty [1] 6/8

## H

happy [2] 11/12 46/3
hearing [5] 1/10 3/6 15/5 15/8 47/6
hereby [1] 48/2
highly [1] 44/18
Highway [1] 1/15 48/7
home [4] 32/22 37/22 38/18 39/6
Homeland [2] 2/10 12/21
Honor [65]
HONORABLE [1] 1/10
house [5] 32/23 33/24 35/5 40/10 42/19
HSI [1] 12/23
Hunter [1] 6/5
hurdle [1] 36/15
hyphen [1] 5/19

## I

ID [1] 32/24
identification [3] 20/19 25/2 37/22
identity [3] 12/2 41/12 44/6
imposes [1] 6/9
improper [1] 42/24
inartfully [1] 23/17
incident [1] 42/11
inclusion [1] 5/16
independent [4] 34/4 37/3 37/19 37/23

indicative [1] 12/6
indictment [3] 4/14 7/4 46/14
individual [2] 8/12 13/4
inextricably [4] 41/22 42/1 42/3 43/19
information [12] 3/15 3/18 3/23 10/25 15/21 20/23 21/19 21/19 22/16 46/11 46/24 46/24
inquire [1] 12/16
insinuate [1] 44/8
instances [1] 41/14
insufficient [2] 36/24 39/14
insure [1] 47/5
intent [23] 3/17 5/11 6/8 6/11 6/20 6/22 7/1 7/9 10/13 38/19 39/17 39/18 39/19 39/21 40/3 40/10 40/20 40/22 41/3 41/5 41/13 44/19 44/23
intentionally [1] 3/16
intercepts [1] 34/9
interpretation [1] 29/8
interpreter [1] 2/17
interrupt [1] 28/7
intertwined [4] 41/22 42/1 42/3 43/19
intervene [1] 46/18
interview [1] 28/18
introduce [8] 3/7 5/1 5/10 5/23 6/3 7/11 8/23 40/13
introducing [1] 16/23
investigation [6] 12/25 13/3 13/7 28/8 37/1 45/22

**I**

**investigations [4]**
2/11 12/21 28/10
28/17
**investigative [1]**
43/2
**iPhone [1]**  24/6
**iPhone 14s [1]**
24/6
**iPhones [5]** 25/8
26/4 30/21 33/7
33/10
**issuance [1]** 42/7
**issue [14]**  3/15
4/21 5/4 5/8 6/9
6/12 6/22 7/9 7/23
10/14 12/2 12/3
38/15 39/16
**issues [4]**  2/24
11/10 41/6 44/19
**item [1]**  15/14
**items [2]**  20/20
41/8

**J**

**JACK [3]**  1/18
2/13 36/4
**January 2022 [1]**
22/22
**Jernigan [1]**  5/12
**JOHN [2]**  1/14 2/8
**Jordan [3]**  8/25
21/21 43/4
**JUDGE [3]**  1/11
27/25 45/12
**July 17th [1]**  3/14
**June 1 [1]**  45/9
**June 22 [2]**  9/4
29/23
**June 22nd [3]**
3/18 23/20 44/13
**jury [2]**  10/24
42/19
**Justin [22]**  7/20
7/22 8/1 8/2 8/7
8/10 8/19 8/25
13/7 13/8 13/9
13/13 13/14 13/21
13/22 13/24 14/8
15/18 21/3 21/21
27/13 43/4

**K**

**kilogram [1]**  11/3
**kilograms [1]**
35/19
**knowingly [1]**
3/16

**L**

**Lake [1]**  23/4
**Lakes [1]**  1/18
**language [1]**  2/20
**large [3]**  39/7
39/24 42/8
**late [1]**  30/21
**law [4]**  41/7 41/15
42/2 45/8
**legal [4]**  41/23
43/22 43/23 44/21
**liable [1]**  22/1
**license [1]**  9/24
**light [3]**  39/8 40/7
40/8
**lightly [1]**  5/17
**limine [1]**  45/19
**limited [1]**  6/21
**link [1]**  9/11
**linking [2]**  10/10
12/8
**links [4]**  31/19
31/21 33/19 44/3
**list [2]**  11/7 26/18
**lists [1]**  32/23
**literally [1]**  37/18
**location [2]**  33/20
33/21
**locations [2]**  11/5
34/2
**lower [1]**  14/19

**M**

**male [1]**  34/25
**March 16th [1]**
3/15
**March 8th [1]**  9/2
**material [2]**  6/9
45/15
**matter [2]**  3/13
48/4
**matters [1]**  46/7
**MC [1]**  34/18
**McMILLAN [8]**
1/14 2/9 3/24 4/17
18/4 40/16 46/8

47/4
**meeting [1]**  11/5
**memorandum [1]**
4/25 5/10 9/6
**merely [1]**  38/17
**message [13]**
11/10 12/5 13/12
14/12 15/17 18/15
18/17 18/19 18/24
19/25 21/3 27/20
27/23
**messages [29]**
3/9 5/22 7/17 7/25
8/24 9/10 9/20
11/8 18/5 26/15
26/20 26/22 30/12
30/14 30/18 33/21
33/22 33/25 34/2
34/3 36/22 37/19
37/25 38/3 38/3
43/6 43/21 44/2
45/1
**messaging [1]**
31/2
**MILLAN [1]**  34/18
**miller [4]**  1/23
1/24 48/5 48/6
**mixture [1]**  3/21
**mobile [6]**  20/9
20/24 22/15 22/20
22/21 22/23
**model [1]**  30/21
**moment [3]**  11/17
16/8 29/13
**months [1]**  9/7
**moons [1]**  28/25
**motion [32]**  1/10
3/6 3/8 3/10 3/11
4/17 4/17 5/1 5/21
5/23 11/2 11/11
11/21 14/21 18/7
18/9 26/15 36/1
36/1 36/23 38/10
40/17 43/14 43/18
44/25 45/2 45/12
45/16 45/19 46/1
46/3 47/14
**motions [2]**  45/10
45/11
**motive [1]**  42/24
**Motor [2]**  17/7
17/13
**MR [1]**  34/18

Mr. **[51]**
**Mr. Belas [1]**  9/11
**Mr. Bizly [1]**
27/17
**Mr. Fleischman**
**[9]**  2/15 2/18 15/5
18/9 30/11 36/1
39/12 45/11 47/1
**Mr. Fleischman's**
**[1]**  40/25
**Mr. Garth [5]**
13/15 26/11 27/15
27/23 37/6
**Mr. Justin [3]**  8/1
8/19 43/4
**Mr. McMillan [6]**
3/24 4/17 18/4
40/16 46/8 47/4
**Mr. Rosier [20]**
2/16 2/23 7/17
9/25 22/10 24/18
26/9 30/15 32/13
32/19 33/19 34/25
37/2 37/5 38/5
39/5 39/20 42/6
42/24 45/3
**Mr. Rosier's [4]**
23/8 25/8 30/16
32/22
**Mr. Rosier's**
**possession [1]**
10/3
**multi [1]**  11/4
**multi-gram [1]**
11/4
**multiple [1]**  11/14

**N**

**narcotics [1]**  29/5
**nature [1]**  6/2
**near [1]**  33/20
**necessary [5]**
40/8 42/4 42/14
43/8 45/23
**nine [1]**  10/19
**nitrile [1]**  35/11
**none [1]**  41/7
**North [1]**  1/19
**notice [1]**  46/11
**number [34]**  2/5
9/11 9/16 9/19
10/3 10/10 12/8
13/21 15/9 18/2

18/18 18/19 19/16
20/8 20/10 20/24
21/1 21/2 21/3
21/4 21/20 21/21
21/25 22/17 22/18
22/20 24/17 25/7
25/20 26/3 26/6
26/10 44/3 47/7
**number**
**23-Criminal-8004**
**5 [1]**  2/5
**numbering [2]**
18/5 47/6
**numbers [4]**
16/22 16/23 21/12
27/5
**numerous [2]**  3/9
41/15

**O**

**object [1]**  27/25
**objection [13]**
3/11 15/4 15/6
17/25 19/15 21/8
21/9 21/11 25/16
25/17 25/19 36/20
40/13
**objections [2]**
45/3 45/5
**objectives [1]**
12/4
**obligation [1]**  7/5
**obliged [1]**  6/24
**observations [2]**
24/21 26/8
**observed [1]**  24/1
**obtain [1]**  31/1
**obtained [1]**
32/14
**occasion [1]**
28/18
**occasions [1]**
41/16
**October 15th [1]**
29/14
**October 4th [1]**
9/1
**offense [5]**  3/16
6/8 6/19 7/4 40/24
**offenses [2]**  13/1
28/19
**Office [1]**  1/14
**Official [2]**  1/23

## O

Official... [1] 48/6
older [1] 34/24
opposed [3]
13/25 16/22 43/21
opposition [1]
38/10
order [1] 13/20
orderly [1] 47/7
organic [1] 33/25
ought [1] 43/1
ounces [3] 10/21
27/16 27/24
outlined [1] 40/11
outweighs [1]
40/6
overview [1]
43/22

## P

P-E-R-E-Z [1]
5/19
P-R-O-C-E-E-D-I-
N-G-S [1] 1/25
p.m [3] 16/2
29/14 47/22
packaged [1]
39/24
packages [3]
32/8 32/12 32/15
packaging [3]
32/8 32/18 35/12
page [16] 8/22
14/14 14/14 14/19
14/20 14/24 15/17
16/12 16/13 16/18
16/21 16/25 18/10
27/5 27/12 47/18
page 1 [1] 27/12
page 5 [1] 8/22
page 59 [5] 14/14
14/19 14/20 14/24
15/17
page 60 [3] 16/18
16/25 18/10
pages [7] 1/7
4/22 6/6 6/15
11/14 18/16 27/3
pages 1357 [1]
6/15
pages 898 [1]
4/22
paints [2] 40/7

40/7
Palm [3] 1/18
12/22 23/4
papers [1] 11/1
part [6] 4/24 5/2
12/25 13/7 15/8
39/5
participated [1]
28/23
parties [1] 2/6
party [2] 22/1
22/2
pause [1] 11/25
pay [1] 29/20
payor [2] 31/14
37/14
penalties [1] 4/6
people [6] 7/9
27/18 28/13 28/18
28/24 31/8
Perez [1] 5/19
Perez-Tosta [1]
5/19
period [6] 3/14
8/17 8/19 8/20 9/1
45/25
permission [1]
5/1
permit [1] 9/13
permits [1] 15/1
person [27] 11/6
13/22 13/25 14/2
14/5 14/7 14/11
17/8 17/10 22/4
22/9 23/2 24/13
25/8 26/5 31/9
31/11 31/21 33/3
33/7 34/20 34/22
34/24 35/15 36/8
37/10 38/8
personnel [1]
9/24
perspective [1]
38/24
phone [51]
phones [10] 24/3
24/5 24/6 24/12
24/17 25/24 30/17
34/9 38/1 38/4
photograph [1]
24/21
photographs [2]
24/22 25/24

photos [1] 10/5
picture [1] 25/11
PIERCE [4] 1/6
1/16 1/19 48/8
place [4] 9/8 25/9
29/7 34/1
Plaintiff [2] 1/4
1/14
pleads [1] 6/8
plenty [1] 46/20
point [11] 2/23
10/12 11/9 21/6
24/9 25/14 42/21
45/6 45/23 46/24
47/12
poke [1] 44/7
police [1] 33/14
posed [2] 23/17
26/12
position [5] 36/5
36/13 36/18 38/6
39/19
possessed [4]
6/25 35/3 41/3
41/5
possessing [3]
3/16 31/24 40/3
possession [14]
6/22 7/12 8/11
10/3 13/15 13/17
26/9 38/19 40/20
42/7 43/5 44/14
44/22 44/23
possessory [1]
38/18
potentially [2]
38/2 44/7
potion [1] 45/21
precedent [1]
6/19
precise [1] 8/4
precisely [1] 42/9
preference [1]
42/1
prejudice [1] 5/6
prejudicial [5]
40/6 41/8 41/8
41/10 41/11
prepared [2] 9/14
26/20
preponderance
[5] 36/7 36/19
38/7 44/1 44/10

presence [1] 37/2
present [5] 2/14
9/14 25/9 41/17
42/17
presentation [2]
41/20 47/4
preserve [1]
41/22
pretrial [1] 45/10
price [1] 10/21
prices [1] 10/20
pricing [1] 11/3
print [1] 17/12
printout [7] 17/13
17/19 18/23 19/3
19/9 19/20 23/9
probative [5] 5/5
6/19 40/6 41/9
44/18
proceedings [3]
11/25 47/22 48/3
proffered [1] 8/19
programmed [1]
14/3
prong [1] 6/7
proof [3] 36/24
39/14 39/25
proper [2] 41/23
47/5
properly [1] 45/2
prosecuted [1]
7/18
prosecution's [1]
5/18
protective [1]
35/6
prove [10] 6/10
6/24 36/14 36/16
36/18 38/7 39/8
39/21 39/21 40/3
proven [1] 37/9
proves [1] 37/21
proving [2] 36/7
40/10
proximity [2]
40/24 41/13
pulls [1] 35/10
purported [3]
38/4 38/16 39/1
purportedly [1]
38/4
purposes [2] 15/5
44/16

pursuant [4] 3/7
4/10 8/9 13/10
purview [1] 41/16

## Q

Quail [1] 23/4
qualifying [1]
6/10
quantities [1]
11/4
quantity [3] 7/10
35/18 42/8
question [8] 8/3
8/14 23/17 26/12
26/23 29/22 41/10
41/21
questions [3]
35/1 35/21 41/19
quote [1] 5/11
quotes [1] 26/2

## R

raise [2] 45/4
45/4
reached [1] 27/13
reaches [1] 29/15
ready [1] 29/16
realize [1] 18/14
rebuttal [1] 40/16
recess [1] 46/7
recognize [6]
15/13 17/17 20/20
20/22 25/3 25/5
record [8] 12/14
14/18 15/3 15/8
21/1 21/18 22/17
44/11
records [7] 22/19
22/24 30/22 31/22
38/2 44/4 44/12
rectify [1] 2/25
redirect [2] 34/16
34/17
reference [1] 11/3
referenced [1]
20/1
reflected [2]
22/24 30/18
reflective [1] 12/7
registered [2]
9/17 19/21
reinclude [1]
47/17

Page 55

UNITED STATES vs. BELAS SHELSON ROSIER
Case 9:23-cr-80045-AMC Document 49 Entered on FLSD Docket 09/11/2023 Page 55 of 56

# R

relevance [2] 5/8
12/7
remove [2] 6/11
16/18
removed [1] 31/5
rental [1] 24/2
replies [1] 28/5
report [3] 18/24
33/14 33/17
Reporter [2] 1/23
48/6
reprint [1] 16/15
requested [1]
13/20
requirements [2]
43/23 45/7
residence [8] 7/7
8/8 13/9 23/19
23/21 23/25 24/2
29/23
respectfully [1]
41/7
response [5] 3/10
3/11 8/22 36/5
40/12
responsibilities
[1] 12/25
rest [1] 47/9
result [1] 29/1
retrieve [1] 16/7
return [1] 35/22
review [1] 45/18
right-hand [1]
14/19
ringing [1] 44/15
rise [1] 47/21
RMR [2] 1/23 48/6
Road [2] 22/5
30/3
ROSIER [61]
Rosier's [9] 9/23
10/3 23/8 23/19
25/8 30/16 32/22
35/5 37/10
rule [4] 3/7 5/15
5/15 40/17
Rule 404 [1] 5/15

# S

sales [3] 13/22
38/16 38/23
satisfied [3]

29/21 43/24 45/6
screen [2] 26/1
44/13
search [18] 8/7
8/9 13/8 13/10
23/15 23/18 24/4
24/4 24/18 26/5
29/23 30/17 32/22
35/10 39/6 42/7
42/18 43/3
searched [4] 8/9
13/10 30/16 35/5
seat [1] 33/10
second [2] 5/4
28/7
Section [1] 4/6
Section 841 [1]
4/6
Security [2] 2/10
12/21
seek [1] 7/11
seeking [5] 5/10
5/23 6/3 18/6 31/1
seeks [1] 8/23
seized [1] 13/10
selling [2] 13/25
43/8
seminal [1] 4/21
Shall [1] 27/10
share [1] 34/22
SHELSON [10]
1/6 2/5 9/12 12/9
17/11 17/13 17/19
23/12 23/12 23/19
shit [1] 27/17
shot [1] 44/13
sic [2] 27/18 45/5
sift [1] 27/6
sign [1] 7/2
similarity [1]
44/24
single [1] 3/16
site [1] 33/21
six months [1]
9/7
small [1] 39/23
sounds [1] 16/24
source [3] 13/13
14/7 43/6
South [2] 1/15
48/7
SOUTHERN [1]
1/1

span [1] 8/25
Special [16] 2/10
9/14 11/14 12/12
12/20 15/12 16/11
17/6 19/5 20/18
21/15 30/13 34/19
42/5 42/17 42/21
specific [3] 7/22
10/17 26/18
specify [1] 3/18
speculation [1]
28/1
spelling [1] 12/14
spreadsheet [3]
26/19 26/20 27/6
squarely [1]
44/19
stage [2] 36/20
37/12
Stand [1] 29/13
standard [4]
32/13 32/13 36/6
44/11
starting [2] 2/6
3/14
state [1] 12/13
stated [1] 6/7
statement [1]
31/17
statements [1]
7/8
STATES [13] 1/1
1/3 1/11 2/4 2/9
4/6 4/21 5/12 5/19
6/5 6/14 6/17 48/7
States vs [6] 4/21
5/12 5/19 6/5 6/14
6/17
status [1] 15/25
statute [1] 4/13
stay [1] 36/22
steps [2] 6/11
43/2
sticker [1] 16/18
stipulate [2] 7/3
41/4
stockpile [2] 7/7
42/8
stood [1] 13/12
stopped [1] 33/4
story [2] 42/4
42/15
straight [1] 7/21

street [4] 1/19
10/22 14/2 29/2
street-level [2]
10/22 29/2
submission [1]
45/10
submit [5] 6/21
40/21 41/7 41/11
43/1
submitted [3]
10/15 43/6 43/15
subpoena [4]
20/8 20/9 30/22
31/1
subpoenaed [2]
20/8 38/2
subscriber [10]
20/23 21/19 21/24
22/16 22/23 22/25
31/13 31/22 44/3
44/12
subscription [1]
21/18
substance [3]
3/17 3/21 3/22
substances [3]
3/19 3/25 41/13
substantial [2]
6/9 7/6
substantially [1]
5/5
substantively [1]
9/9
sufficient [5] 5/6
27/9 36/14 40/4
44/16
Suite [1] 1/15
Sullivan [18] 2/10
9/14 11/15 12/12
12/15 12/20 15/12
16/11 17/6 19/6
20/18 21/15 30/10
34/19 42/5 42/18
42/22 43/16
summarized [1]
11/1
supplier [1] 34/6
supply [3] 13/13
14/7 43/7
surrounding [1]
37/24
surveillance [5]
28/23 32/2 32/19

34/8 37/1
suspecting [1]
42/24
suspicious [1]
37/9
sustain [2] 36/20
40/12
sworn [2] 12/11
12/12

# T

T's [1] 21/18
T-Mobile [5] 20/9
20/24 22/15 22/21
22/23
T-O-S-T-A [1]
5/19
table [2] 2/10
35/23
technological [1]
30/20
technology [1]
24/7
telephone [12]
16/1 20/8 20/24
21/4 21/20 24/17
24/19 26/2 26/10
26/10 26/11 33/23
telephones [1]
13/9
temporally [1]
44/4
ten days [1] 47/6
ten grams [2]
3/20 4/3
tens [1] 11/4
term [1] 37/23
terminology [1]
29/2
terms [4] 9/10
10/11 10/23 25/24
terrible [1] 40/7
test [5] 4/24 5/3
8/15 10/1 24/11
testimony [4]
9/15 12/7 30/13
43/15
text [45] 3/9 5/22
7/17 7/25 8/23
9/10 9/19 11/7
11/10 12/5 13/12
14/12 15/17 15/24
18/5 18/15 18/16

## T

text... [28] 18/19 18/24 19/25 21/3 26/15 26/20 26/21 30/12 30/14 30/18 31/2 31/19 33/21 33/22 33/25 34/2 34/3 36/22 37/7 37/19 37/25 38/3 38/3 42/9 43/6 43/20 44/22 45/1
texted [1] 37/8
texts [4] 11/20 12/7 34/11 38/8
thank [20] 4/19 17/1 23/10 28/4 30/4 34/14 34/15 35/20 35/22 35/24 38/9 40/15 43/10 43/10 43/12 46/23 47/9 47/11 47/19 47/20
Thereafter [1] 24/20
thought [2] 29/5 46/19
thousands [1] 11/5
thread [3] 14/12 15/17 21/3
threads [1] 13/12
three-part [1] 4/24
throw [1] 29/19
thus [1] 7/5
time [18] 4/24 8/16 8/19 8/20 9/1 11/13 17/23 23/11 24/9 24/18 29/20 31/5 44/25 45/17 45/18 46/2 46/20 46/22
times [1] 11/5
Title [1] 4/5
Title 21 [1] 4/5
today's [2] 31/17 47/6
Tosta [1] 5/19
total [1] 35/14
touch [2] 38/14 39/16
touched [2] 39/13

40/19
tower [2] 33/18 37/24
track [1] 19/1
trafficker [1] 8/25
trafficking [4] 6/8 10/23 28/24 29/2
TRANSCRIPT [1] 1/10
transcription [1] 48/3
transfer [1] 11/4
transferred [1] 22/21
translate [1] 10/23
transmitted [1] 35/12
trash [1] 35/10
trial [4] 3/13 45/4 45/24 46/21
triangulation [2] 33/19 37/25
Turning [1] 29/11
two-week [1] 3/14

## U

U.S [2] 1/14 48/7
unable [1] 30/20
uncle [1] 34/25
unclear [1] 37/12
undue [1] 5/5
unduly [1] 41/11
unfairly [2] 41/8 41/11
UNITED [13] 1/1 1/3 1/11 2/4 2/9 4/5 4/21 5/12 5/18 6/4 6/14 6/16 48/7
unless [3] 3/4 41/4 41/19
unlikely [1] 35/7
unpublished [1] 6/5
upset [1] 46/10
us [3] 1/15 45/14 46/20

## V

vacuum [1] 42/17
value [3] 5/5 40/6 40/7
vehicle [10] 24/1

24/2 31/6 31/8 31/9 33/3 33/6 33/11 33/13 37/13
Vehicles [2] 17/7 17/13
verification [1] 44/5
versed [1] 29/5
version [1] 26/20
versus [2] 4/3 44/22
vi [2] 4/10 4/11
video [1] 10/5
videotape [1] 10/5
violation [2] 3/19 3/24
virtually [2] 4/23 6/19
vs [8] 1/5 2/4 4/21 5/12 5/19 6/5 6/14 6/17

## W

warrant [15] 8/7 8/9 13/9 13/10 23/16 23/18 24/4 24/18 26/6 29/23 35/10 39/6 42/7 42/18 43/3
weakest [1] 39/17
wearing [1] 35/13
well-versed [1] 29/5
West [2] 12/21 23/4
wherein [1] 6/18
willing [1] 41/4
wireless [3] 21/18 21/19 22/15
wish [2] 28/3 47/9
wishes [1] 7/3
witnesses [5] 34/4 34/9 37/3 37/23 37/24
wondering [1] 11/9
Woodfield [3] 22/5 29/25 30/3

## Y

Yo [1] 28/5

## Z

Z-A-P-A-T-A [1] 6/14
Zapata [1] 6/14
zips [1] 10/21